# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL WALKER,** <br>             **Petitioner,** <br> **v.** <br> **RICHARD MARSH,** *et al.***,** <br>             **Defendants.** | **CIVIL ACTION NO. 19-2832** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                       **August 22, 2022**

Walker has filed a *pro se* petition for habeas corpus relief under 28 U.S.C. § 2254. The Petition was referred to the Honorable Magistrate Judge Elizabeth Hey for a Report and Recommendation ("R&R"). The R&R recommended that Walker's petition be dismissed as untimely.[1] Walker has filed objections[2] to which the Berks County District Attorney has declined to respond, choosing to stand on the logic set forth in the R&R.[3] Walker also filed two motions, respectively labeled as a "Motion to Compel Judgment Pursuant to Federal Rule of Civil Procedure 12(c)" and a "Motion for Relief under Rule 60(b)(6)." For the reasons set forth herein: (1) Walker's Rule 60(b)(6) motion will be construed as supplemental objections to the R&R, (2) Walker's 12(c) motion will be dismissed as moot, (3) Walker's objections will be sustained in part and denied in part, (4) the R&R will be approved as to its conclusion, and (5) Walker's petition for habeas corpus relief will be denied as untimely.

---

[1] R&R [Doc. No. 18].

[2] Pet.'s Objections to R&R [Doc. No. 19].

[3] Letter July 26, 2022 [Doc. No. 29].

I. **PROCEDURAL HISTORY**

The Court adopts the procedural history set forth in the R&R, which has not been challenged in Walker's objections. The Court restates the history that is relevant to Petitioner's objections.

On December 19, 2011, a home invasion and robbery occurred at the home of Brian Trump in Berks County, Pennsylvania, during which Stephen Leibensberger was stabbed to death. Trump, who was not home at the time of the murder, immediately identified Walker as a potential suspect, and Walker was arrested at a hotel in early the next day.[4] The arresting officers found items in Walker's hotel room consistent with drug paraphernalia: "[g]lassine packets with white residue, a glass smoking pipe, and a copper-colored screen."[5]

During a post-arrest interview with Pennsylvania State Troopers Brady and Wegscheider in which oral, and later, written, *Miranda* warnings were given, Walker confessed in writing to travelling to Trump's house with his father, Mark Ellis, and stepbrother, Brandon Simpkins, and to stabbing Leibensberger to death.[6] Later that day, Walker received a screening and health assessment at Berks County Jail from Susan Mechling, LPN, and was given "detoxification treatment for alcohol" for the next five days.[7]

---

[4] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 4 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF page 4.

[5] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 4 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF page 4.

[6] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 5 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF pages 5, 7–8.

[7] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 5 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF page 5.

Prior to trial, Walker filed a motion to suppress his written and oral confessions, alleging that he was under the influence of drugs at the time of his confession and lacked the ability to understand and knowingly waive his *Miranda* rights.[8] This motion was denied after several days of hearings.[9]

On April 23, 2015, a jury convicted Walker of 17 counts arising from the events of December 19, 2011, including first degree murder and conspiracy to commit murder of the first degree, and acquitted Walker of two counts related to theft and conspiracy to commit theft by unlawful taking or disposition of a gun.[10] Walker was sentenced to a mandatory term of life imprisonment for the first-degree murder conviction, and between 20 and 40 years for the other convictions, to run consecutively to the life sentence.[11]

On direct appeal, Walker argued that the trial court erred by denying his pretrial motion to suppress his written and spoken confessions. Walker argued that he was under the influence of drugs when those confessions were made, and so had not knowingly and voluntarily waived his *Miranda* rights. On March 18, 2016, the Superior Court affirmed the judgment of sentence,[12] and the Pennsylvania Supreme Court denied leave to appeal further on July 7, 2016.[13]

---

[8] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 5 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF page 5.

[9] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Findings of Fact & Conclusions of Law Denying Omnibus Pretrial Mot., at 5 (Berks C.C.P. Dec. 9, 2014), *attached as* Doc. No. 11-6, ECF page 19.

[10] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Verdict of the Jury (Berks C.C.P. Apr. 23, 2015), *attached as* Doc. No. 11-6, ECF pages 18–19.

[11] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Life Sentence Order and Sentencing Orders (Berks C.C.P. May 29, 2015) *attached as* Doc. No. 11-6, ECF pages 20–24.

[12] *Commonwealth v. Walker*, No. 933 MDA 2015, 2016 WL 1082827, at *5 (Pa. Super. Ct. Mar. 18, 2016).

[13] *Commonwealth v. Walker*, 141 A.3d 480 (table) (2016).

On March 6, 2017, Walker filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), asserting ineffective assistance of counsel. On January 29, 2018, appointed PCRA counsel filled a *Finley* "no merit" letter and petition to withdraw as counsel. Counsel was permitted to withdraw, and after additional *pro se* briefing by Walker, the PCRA court dismissed Walker's PCRA petition on July 2, 2018. Walker then made various filings in the PCRA court, "none of which constituted an appeal of the order dismissing his PCRA petition."[14]

## II.  COLLATERAL MOTIONS

Walker has filed a "Motion to Compel Judgment Pursuant to Federal Rule of Civil Procedure 12(c)" and a "Motion for Relief under Rule 60(b)(6)." Courts in the Third Circuit are "flexible when applying procedural rules to pro se litigants," and should "apply the relevant legal principle even when the complaint has failed to name it."[15] For this reason, the Court looks to the substance of Walker's filings as well as the rules that he cites. Walker's "Motion for Relief under Rule 60(b)(6)" asks the Court "for relief . . . to raise his otherwise time-barred valid claims that trial counsel was ineffective," and to issue a certificate of appealability with respect to the timeliness of Walker's claims.[16] A motion for relief under Rule 60(b)(6) allows the Court to grant relief "from a final judgment, order, or proceeding" for a limited set of reasons.[17] However, Walker's motion does not relate to any specific order or judgment. Instead, Walker argues that deadlines should be tolled in his case, and he asks for a certificate of appealability (presumably

---

[14] R&R [Doc. No. 18] at ECF page 5.

[15] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

[16] Rule 60(b) Mot. [Doc. No. 24] at ECF pages 3–4.

[17] Fed. R. Civ. P. 60(b).

4

with respect to any adverse determination about timeliness). No final order on these issues has been entered, and so Walker's Rule 60(b) motion will be denied. Instead, the Court will construe the arguments regarding timeliness as supplemental objections to the R&R.

Walker also filed a "Motion to Compel Judgment Pursuant to Federal Rule of Civil Procedure Rule 12(c)."[18] Judgment on the pleadings under Rule 12(c) is unavailable in habeas proceedings where the government has filed a response, because under Habeas Rule 5 "the respondent to a habeas petition is required to submit matters outside the pleadings," such as transcripts and previous court filings, "along with her answer."[19] Ordinarily, where a Rule 12(c) motion for judgment on the pleadings invokes matters outside of the pleadings, the motion would be converted into a Rule 56 motion for summary judgment.[20] However, Walker's filing meets none of the requirements for a motion under Rule 56—it does not point to any undisputed facts in the record[21] or "identify[] each claim or defense . . . on which summary judgment is sought."[22] In substance, this motion asks the Court to rule on the merits of Walker's habeas petition.[23] The Court now does so by reviewing the R&R and ruling on Walker's objections, and so Walker's 12(c) motion will be dismissed as moot.[24]

---

[18] Pet.'s Mot. Compel J. [Doc. No. 26].

[19] *Porter v. Berghuis*, No. 07-781, 2009 WL 3153148, at *2 (W.D. Mich. Sept. 29, 2009) (internal quotation marks omitted) (citing Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts).

[20] Fed. R. Civ. P. 12(d).

[21] Fed. R. Civ. P. 56(c)(1).

[22] Fed. R. Civ. P. 56(a).

[23] Pet.'s Mot. Compel J. [Doc. No. 26] at ECF page 1.

[24] In habeas proceedings district courts regularly refrain from converting a prisoner's *pro se* Rule 12(c) motion into a Rule 56 motion *sua sponte*. *See, e.g.*, *Lenhart v. Rozum*, No. 10-218, 2013 WL 2047405, at *1 (W.D. Pa. May 14, 2013) (denying a 12(c) motion "as improvidently filed, given that such a motion does not appear to be proper for proceedings under 28 U.S.C. § 2254.")).

### III. TIMELINESS OF THE HABEAS PETITION

The R&R concluded, and Walker concedes, that Walker's petition is on its face untimely "by more than three months," and is not saved by statutory tolling under 28 U.S.C. § 2244(d)(2) of the time during which a "properly filed" PCRA proceeding was pending.[25] However, Walker has filed objections claiming that the Court should equitably toll the statute of limitations. The arguments are largely contained in Walker's "Rule 60(b) motion" which, as previously discussed, the Court treats as supplemental objections to the R&R.

A district court may equitably toll the statute of limitations in a habeas case "when a petitioner has been prevented in 'some extraordinary way' from timely filing and has 'exercised reasonable diligence' in bringing the claims."[26] However, equitable tolling should be used scarcely, and "only when the principle of equity would make the rigid application of a limitation period unfair."[27]

In the supplemental objections, Walker claims that his ability to get "legal aid assistance" and access the law library at SCI Brenner has been limited by the pandemic. Walker also claims that his Rule 60(b) motion was "intercepted . . . back to me twice by the Jail Administration," and that Walker "had to get another inmate to mail it out to someone on the outside to send it in to the Court." Walker states that he has "never had this issue before with the Jail Administration intercepting my legal mail back to me."[28]

---

[25] R&R [Doc. No. 18] at ECF pages 9–10; Pet.'s Objections [Doc. No. 19] at ECF page 5.

[26] *Wallace v. Mahanoy*, 2 F.4th 133, 143 (3d Cir. 2021) (citation omitted).

[27] *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (internal quotation marks and citation omitted); *see also Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004).

[28] Rule 60(b) Mot. [Doc. No. 24] at ECF pages 1–2, 4.

However, the relevant deadlines in this petition, including the 2019 filing of the § 2254 petition, all happened before the COVID-19 pandemic and resulting restrictions on library access. With respect to Walker's claims about interference with his legal mail, the District Attorney of Berks County has filed no response to this objection, and the Court has no reason to doubt Walker's claim that he had difficulty mailing the Rule 60(b) motion.[29] Allegations of interference with legal mail, whether intentional or accidental, are always treated seriously by the Court. However, Walker specifically claims that he had no similar difficulties with legal mail before he attempted to file the Rule 60(b) motion in October of 2021. As the factors cited by Walker did not influence the timing of his initial habeas filing, the Court approves and adopts the R&R's conclusion that Walker is not entitled to equitable tolling.

## IV. ACTUAL INNOCENCE GATEWAY

Walker also argues that the Court should reach the merits of his petition despite the statute of limitations under the actual innocence "gateway." Walker argues that, as a matter of law, some of the evidence that was known to Walker's counsel at the time of his trial should be treated as "new evidence" for statute of limitations purposes.[30] The R&R rejected this argument, stating that "[c]ounsel's decision to employ a different trial strategy does not transform evidence

---

[29] Walker substantiates this claim by attaching several "cash slips," which indicate that he attempted to mail documents to this Court on September 22, 28, and 30 of 2021. Rule 60(b) Mot. [Doc. No. 24] at ECF pages 5–7. No documents were received between those attempted mailings and the Court's receipt of Petitioner's "Rule 60(b) Motion" on October 18, 2021. The filing envelope also seems to substantiate Walker's claim that another person mailed it on his behalf—the envelope is postmarked "Philadelphia," far from Walker's place of confinement, and does not bear the "INMATE MAIL" stamp that appears on Walker's other correspondence with the Court. Rule 60(b) Mot. [Doc. No. 24] at ECF page 8.

[30] Pet.'s Objections [Doc. No. 19] at ECF pages 4–6.

known to exist prior to trial into 'new' evidence for purposes of the actual innocence exception."[31]

However, Walker correctly notes in his objections that there is an exception to the rule articulated by the R&R when a petitioner asserts that counsel was ineffective by failing to make use of or investigate evidence.[32] To the extent that the R&R did not consider Walker's claimed new evidence in conjunction with his "ineffective assistance of counsel" claims, the Court declines to adopt the reasoning of the R&R and will determine whether this is the "'rare' and 'extraordinary' case where 'a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"[33]

### A. Legal Standard

A district court is ordinarily limited by the one-year statute of limitations applicable to habeas petitions. However, "there is a narrow class of cases in which, in order to avoid a fundamental miscarriage of justice, evidence of a petitioner's actual innocence" permits courts to ignore procedural barriers to relief.[34] "A case in which a petitioner seeks to excuse his procedural default by advancing a claim of actual innocence is known as a 'gateway' case."[35]

---

[31] R&R [Doc. No. 18] at ECF page 14.

[32] Pet.'s Objections [Doc. No. 19] at ECF pages 5–6 (citing *Reeves v. Fayette SCI*, 897 F.3d 154, 164 (3d Cir. 2018), *as amended* (July 25, 2018)).

[33] *Reeves*, 897 F.3d at 161 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392, 401 (2013)).

[34] *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010).

[35] *Id*.

The burden on a petitioner is high, however, and "tenable actual-innocence gateway pleas are rare."[36] For the Court to ignore the habeas statute of limitations based on a claim of innocence, "a petitioner must demonstrate two things before his procedural default will be excused. First, a petitioner must present new, reliable evidence" of his actual innocence "that was not presented at trial."[37] Where, as here, "a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence" for the purposes of asserting the "actual innocence gateway."[38] "As part of the reliability assessment of the first step, the court 'may consider how the timing of the petitioner's submission and the likely credibility of the witnesses bear on the probable reliability of that evidence,' as well as the circumstances surrounding the evidence and any supporting corroboration."[39]

Next, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[40] At this second step, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."[41]

---

[36] *McQuiggins*, 569 U.S. at 386.

[37] *Houck*, 625 F.3d at 93 (citation omitted).

[38] *Reeves*, 897 F.3d at 164.

[39] *Id.* at 161 (quoting *House v. Bell*, 547 U.S. 518, 537, 551 (2006)))) (cleaned up).

[40] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

[41] *House*, 547 U.S. at 538 (internal quotation marks and citation omitted).

9

### B. Discussion

Walker alleges that he was denied a fair trial due to the ineffective assistance of his appointed counsel. Walker argues that material evidence was available to Defendant's allegedly ineffective trial counsel, but not submitted, and should be treated as "new:" a letter between Petitioner's two co-defendants, Mark Ellis and Brandon Simpkins, in which Ellis instructs Simpkins "to inculpate [Walker] as the only culpable suspect inside the house at the time the victim was killed."[42] Read liberally, Walker's objection raises two other pieces of "new" evidence that were not presented due to the alleged ineffectiveness of Walker's trial counsel: (1) the testimony of Nurse Mechling,[43] and (2) Walker's own testimony, which Walker says he withheld due to inaccurate legal advice from his trial counsel.[44] As the first step of the "actual innocence" analysis, the Court examines each piece of evidence in turn to see if it qualifies as "new, reliable evidence" when considering Walker's claims of ineffective assistance of counsel.

#### 1. The Ellis-Simpkins Letter

Walker claims that a letter between his two co-defendants, Ellis and Simpkins, represents new, reliable evidence of his actual innocence that was not presented only through his counsel's ineffective assistance.[45] Ellis sent a letter to Simpkins while Simpkins was incarcerated in Berks County Prison (the "Ellis-Simpkins Letter"), which contained a version of the events on

---

[42] Pet.'s Objections [Doc. No. 19] at ECF page 6.

[43] Pet.'s Objections [Doc. No. 19] at ECF pages 7–8.

[44] Pet.'s Objections [Doc. No. 19] at ECF pages 10–11.

[45] Pet.'s Objections [Doc. No. 19] at ECF pages 5–6.

December 19, 2011. Simpkins testified at Ellis's trial that this version was a lie, and that he believed that Ellis was attempting to coordinate their respective testimonies.[46]

The Ellis-Simpkins Letter tells a version of events that supposedly exonerates Ellis and Simpkins at the expense of Walker. According to the Ellis-Simpkins Letter, Ellis and Simkins accompanied Walker to Trump's house at his request so that Walker could "get [his] things from Brian's house."[47] Walker entered the house on his own and sent Ellis and Simpkins to the rear of the house. Ellis and Simpkins briefly entered the house at Walker's invitation but stayed in the rear kitchen until they left through the front door and "did not see any blood trails or anybody."[48]

At Ellis's trial, Simpkins testified to a significantly different version of events than that in the Ellis-Simpkins Letter. Ellis testified that he, Ellis, and Walker travelled to Trump's house with the plan "to get some money" by stabbing the person who opened the door,[49] and that Walker brought a knife with him.[50] Simpkins testified that Walker entered the house first; however, he also testified that he and Ellis entered the house while Leibensberger was alive, that they saw Leibensberger inside, and that Walker and Ellis attacked Leibensberger while Simpkins was in a separate room.[51]

---

[46] *Commonwealth v. Ellis*, CP-06-CR-1329-2012, Trial Tr. at 486–88, 490–93 (Berks C.C.P. Jan. 15–23, 2013) *available at* Doc. No. 11-7, ECF pages 73, 74–75.

[47] Ellis-Simpkins Letter [Doc. No. 11-7] at ECF page 81.

[48] Ellis-Simpkins Letter [Doc. No. 11-7] at ECF pages 81–82.

[49] *Commonwealth v. Ellis*, CP-06-CR-1329-2012, Trial Tr. at 468 (Berks C.C.P. Jan. 15–23, 2013) *available at* Doc. No. 11-7, ECF page 69.

[50] *Commonwealth v. Ellis*, CP-06-CR-1329-2012, Trial Tr. at 457–58 (Berks C.C.P. Jan. 15–23, 2013) *available at* Doc. No. 11-7, ECF page 66.

[51] *Commonwealth v. Ellis*, CP-06-CR-1329-2012, Trial Tr. at 463–69 (Berks C.C.P. Jan. 15–23, 2013) *available at* Doc. No. 11-7, ECF page at page 67–69.

11

At Walker's trial, Simpkins' testimony was nearly identical to his testimony at Ellis's trial. Simpkins testified that he, Ellis, and Walker travelled to Trump's house to "get some money," and that Walker brought a knife with him.[52] Simpkins again testified that Walker entered the house first, but that Simpkins and Ellis entered the house while Leibensberger was alive and saw Leibensberger inside.[53] Finally, Simpkins testified that Walker and Ellis attacked Leibensberger while Simpkins was in a separate room.[54] There is one significant difference between the testimony at Ellis's and Walker's trial; at Walker's trial Simpkins did not testify that the group travelled to Trump's house with an explicit plan to stab the occupant.[55]

While Walker claims that the Ellis-Simpkins Letter shows a plot to frame him, it does not undercut Simpkins' actual testimony at Walker's trial. The letter was a communication *to* Simpkins and presents a version of the relevant events that both Simpkins and Walker allege was a lie.[56] Simpkins' actual testimony was markedly different from the version in the Ellis-Simpkins Letter, did not exonerate Ellis, and implicated Simpkins himself in at least some criminal activity—a far cry from the supposed goal of the Ellis-Simpkins Letter. At most, the Ellis-Simpkins Letter presents a motive for Simpkins to lie: Ellis, his father, asked him to.

---

[52] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Trial Tr. at 493–94, 499 (Berks C.C.P. Apr. 22, 2015).

[53] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Trial Tr. at 501–03 (Berks C.C.P. Apr. 22, 2015).

[54] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Trial Tr. at 504–05 (Berks C.C.P. Apr. 22, 2015).

[55] Walker's objections note that Simpkins has given conflicting accounts of when Simpkins learned of the planned murder, and highlights that Simpkins was cross-examined on a similar discrepancy at Ellis's trial. Pet.'s Objections [Doc. No. 19] at ECF page 15.

[56] *Commonwealth v. Ellis*, CP-06-CR-1329-2012, Trial Tr. at 486–88, 490–93 (Berks C.C.P. Jan. 15–23, 2013) *available at* Doc. No. 11-7, ECF pages 73, 74–75; Pet.'s Objections [Doc. No. 19] at ECF pages 5–6.

"[M]ere impeachment evidence is generally not sufficient to show actual innocence by clear and convincing evidence."[57] Evidence that only goes to a prosecution witness's credibility "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions."[58] Although Walker's trial counsel did not introduce the Ellis-Simpkins Letter or use it to impeach Simpkins, Walker's trial counsel extensively cross-examined Simpkins about the fact that he was also facing murder charges and potential life imprisonment, that he had told multiple stories at various stages of the investigation and trial, and that he was highly motivated to cooperate with the prosecution.[59] Given the extensive impeachment evidence presented to the jury, even if counsel were ineffective for not using the Ellis-Simpkins Letter, it does not constitute "new, reliable evidence" for the purposes of the actual innocence gateway.[60]

2. *The Testimony of Nurse Mechling*

Walker also argues that the testimony of Susan Mechling, LPN, should be treated as new evidence.[61] Mechling conducted Walker's initial post-arrest screening on December 20, 2011. Walker claims that "had Ms. Mechling testified, she would have been able to sustain [Walker's] position that he was heavily under the influence and incoherent when he provided the statements

---

[57] *Munchinski v. Wilson*, 694 F.3d 308, 335 (3d Cir. 2012).

[58] *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

[59] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Trial Tr. at 517–33 (Berks C.C.P. Apr. 22, 2015).

[60] Similarly, the differences between Simpkins' testimony at Ellis's trial and Simpkins' testimony at Walker's trial do not represent new, reliable evidence of Walker's actual innocence. The only significant difference is that at Ellis's trial Simpkins testified that the three men made an explicit, premeditated plan to stab the occupant of Trump's house. Walker's attorney could not reasonably be considered ineffective for withholding this adverse testimony from the jury.

[61] Pet.'s Objections [Doc. No. 19] at ECF pages 8–9.

to the State Troopers."[62] Walker asserts that his trial counsel was ineffective for failing to call Mechling to testify, and for failing to object to the admission of medical records from Walker's initial screening under the confrontation clause of the Sixth Amendment.[63]

Walker has submitted no evidence or affidavit as to what Mechling would say in testimony—only his speculation that Mechling would corroborate Walker's own testimony. "An actual innocence claim must be based on more than the petitioner's speculations and conjectures."[64] Walker's speculation is not supported by the evidence in record. In Walker's intake medical examination, Mechling noted that Walker was "Alert and Oriented to Time, Place and Person," that his appearance was "normal,"[65] and that his mood, affect, and appearance seemed appropriate.[66] Walker's speculation about the contents of Mechling's testimony, without

---

[62] Pet.'s Objections [Doc. No. 19] at ECF page 9..

[63] Habeas Pet. [Doc. No. 1] at ECF pages 32-34.

[64] *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2819 (2022); *see also Lee v. Corsini*, 777 F.3d 46, 62 (1st Cir. 2015) (holding that while "arguments about ineffective assistance of trial counsel invite speculation about what might have happened had his attorney called certain witnesses or pursued different lines of cross-examination, they are just that—speculative" and did not represent new, reliable evidence for "actual innocence" purposes).

[65] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Omnibus Pretrial Hr'g Ex. 1 at 1 (Berks C.C.P. Mar. 14, 2015), *available at* Doc. No. 11-5, ECF pages 15-41.

[66] *Commonwealth v. Walker*, CP-06-CR-328-2012, Omnibus Pretrial Hr'g Ex. 1 at 3 (Berks C.C.P. Mar. 14, 2015), *available at* Doc. No. 11-5, ECF page 17.

While Mechling recorded that Walker "used a lot [of crack cocaine] yesterday," she also recorded that Walker had last used "Benzo (Klonopine, Ativan, Xanax, etc.)" "more than a month ago." *Commonwealth v. Walker*, CP-06-CR-1328-2012, Omnibus Pretrial Hr'g Ex. 1 at 2 (Berks C.C.P. Mar. 14, 2015), *available at* Doc. No. 11-5, ECF page 16. This contrasts with Walker's own testimony at the pretrial hearing, in which he claimed to have snorted Ritalin, Klonopin, Depakote, or Zoloft on the morning of the murder. *Commonwealth v. Walker*, CP-06-CR-1328-2012, Oct. 22, 2014 Omnibus Pretrial Hr'g Tr. at 16–17 (Berks C.C.P. Oct. 22, 2015), *available at* Doc. No. 11-5, ECF pages 45–46.

any supporting affidavit from Mechling or support in the record, is not "new, reliable evidence" that invokes the actual innocence gateway.[67]

### 3. Walker's Own Testimony

Walker claims "that he did not testify at his trial because trial counsel advised him that if he were to do so, the Commonwealth was going to impeach him with his mental health and use his addictions against him."[68] Under Pennsylvania state law, mental health issues may be introduced to impeach the credibility of a witness if those issues "impair a witness's ability to observe, recall, or report events."[69] Similarly, while a drug addiction is not, by itself, admissible for the purposes of impeachment, "a witness may be questioned about drug or alcohol use at the time of the events about which he or she is testifying."[70]

At a pretrial hearing Walker testified that on the morning of the murder, he snorted 20 pills[71] that had been prescribed to him for "bipolar, paranoid schizophrenic, psychotic mood swings," and then smoked "$70 worth of crack cocaine to calm down."[72] Walker then testified that after consuming these drugs he did not remember anything about the following 11 days,

---

[67] As Walker has presented no evidence as to what Mechling would testify to, the Court does not address whether this testimony would support an "actual innocence" claim or reach Walker's argument that his trial counsel was ineffective for failing to insist on Mechling's testimony pursuant to the confrontation clause of the Sixth Amendment.

[68] Pet.'s Objections [Doc. No. 19] at ECF page 10.

[69] *Commonwealth v. Davido*, 106 A.3d 611, 637 (Pa. 2014).

[70] *Commonwealth v. Koehler*, 737 A.2d 225, 239 (Pa. 1999); *see also Commonwealth v. Hayes*, 460 A.2d 791, 795 (Pa. Super. Ct. 1983) (holding that a "trial judge did not err when he permitted the jury to consider [a defendant's] purported drug use, upon which his alibi defense depended, as a factor bearing on the believability of the alibi.").

[71] These pills may have included Ritalin, Depakote, Klonopin, and Zoloft. Walker testified that he ordinarily took four pills a day. *Commonwealth v. Walker*, CP-06-CR-1328-2012, Oct. 22, 2014 Omnibus Pretrial Hr'g Tr. at 16–17 (Berks C.C.P. Oct. 22, 2015), *available at* Doc. No. 11-5, ECF pages 45–46.

[72] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Oct. 22, 2014 Omnibus Pretrial Hr'g Tr. at 16–19 (Berks C.C.P. Oct. 22, 2015), *available at* Doc. No. 11-5, ECF pages 45–46.

which covered the murder, his arrest, his interrogation, and his oral and written confessions.[73]
Given the direct connection between Walker's drug use, his prescriptions for mental health
conditions, and his purported recollection of relevant events, Walker's trial counsel was correct
in cautioning him that the Commonwealth would likely raise these issues on cross-examination.
As Walker chose not to testify due to his counsel's accurate legal advice, he cannot now invoke
the "actual innocence gateway" by presenting his own withheld testimony as "new" evidence.[74]

## V.    CONCLUSION

Walker's Rule 60(b) motion will be denied, as it does not reference or seek review of any
final order. Instead, the Court will construe the arguments regarding timeliness as supplemental
objections to the R&R. Similarly, Walker's Rule 12(c) motion will be dismissed, as judgment on
the pleadings under Rule 12(c) is unavailable in habeas proceedings where the government has
filed a response and the requested relief—action on his petition—is now moot.

Walker's petition under 28 U.S.C. § 2254 was concededly untimely, and the equitable
tolling factors cited in Walker's supplemental objections did not influence the timing of its filing.
The Court approves and adopts the R&R's finding that Walker is not entitled to equitable tolling.
Walker correctly objects that the R&R did not review Walker's claimed new evidence in
conjunction with his "ineffective assistance of counsel" claims, and the Court declines to adopt

---

[73] *Commonwealth v. Walker*, CP-06-CR-1328-2012, Oct. 22, 2014 Omnibus Pretrial Hr'g Tr. at 19–23 (Berks C.C.P. Oct. 22, 2015), *available at* Doc. No. 11-5, ECF pages 46–47.

[74] The Third Circuit has held that "[a] defendant's own late-proffered testimony is not 'new'" for the purposes of invoking the actual innocence gateway "because it was available at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004). It is unclear how this interacts with *Reeves v. Fayette SCI*, which holds that evidence may be considered "new" for the purposes of the actual innocence gateway, even if it was actually known to the defense, if it was not presented to the jury due to the ineffective assistance of trial counsel. *Reeves*, 897 F.3d at 164. However, the Court need not resolve this issue, because Walker alleges that he chose not to testify after receiving accurate legal advice.

the R&R's reasoning on this point. However, the Court agrees with and adopts the R&R's substantive conclusion that Walker has not presented new, reliable evidence supporting his claim of actual innocence, and so is not entitled to ignore procedural barriers like the statute of limitations. Walker's petition is therefore denied as untimely. An order will be entered.